2023R00010/MJB

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Karen M. Williams |
| | : | |
| v. | : | Crim. No. 23- 1010 |
| | : | |
| SAVION CLYBURN | : | 18 U.S.C. § 371 |
| | : | 18 U.S.C. § 922(a)(1)(A) |

### I N F O R M A T I O N

The defendant having waived in open court prosecution by Indictment, the United States Attorney for the District of New Jersey charges:

### COUNT 1
(Conspiracy to Engage in Unlicensed Dealing of Firearms)

### Background and Relevant Parties

1. At all times relevant to this Information:

    a. Defendant SAVION CLYBURN ("CLYBURN") was a resident of Paterson, New Jersey. CLYBURN was not a licensed importer, manufacturer, or dealer of firearms.

2. A privately made firearm ("PMF" or "ghost gun") is a firearm, including a frame or receiver, assembled or otherwise produced by a person other than a licensed manufacturer, and without a serial number or other identifying markings placed by a licensed manufacturer at the time of production. One method of manufacturing a PMF is through additive manufacturing, commonly known as "3D printing." This method involves constructing an object from a computer-aided design ("CAD") or digital 3D model. It can involve a variety of processes in which material is deposited, joined, or solidified under computer control, with material being added together (such as plastics, liquids, or powder

grains being fused), typically layer by layer. Online programs providing instructional tutorials on the use of 3D printers to manufacture PMFs were publicly available and accessible.

3. A federal firearm license ("FFL") is required for any individual or business to operate as a dealer, importer, or manufacturer of firearms. The Federal Firearms Licensing Center, an arm of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), processes FFL applications and maintains the Firearms Licensing System, which contains records regarding approved FFLs. Neither CLYBURN nor his co-conspirators have received an FFL, and they are accordingly not licensed as dealers, importers, or manufacturers of firearms.

## The Conspiracy

4. From on or about December 21, 2022 through on or about January 17, 2023, in Passaic and Hudson Counties, in the District of New Jersey and elsewhere, the defendant,

**SAVION CLYBURN,**

not being a licensed dealer, importer, and manufacturer of firearms within the meaning of Chapter 44, Title 18, United States Code, did knowingly and willfully conspire and agree with others to engage in the business of manufacturing and dealing in firearms, contrary to Title 18, United States Code, Section 922(a)(1)(A).

In violation of Title 18, United States Code, Section 371.

**Goal of the Conspiracy**

5. The goal of the conspiracy was for CLYBURN and others, each without being licensed to deal, import, or manufacture firearms, to manufacture and sell for profit unserialized, privately manufactured firearms.

**Manner and Means**

6. It was part of the conspiracy that:

    a. CLYBURN and others (the "co-conspirators") procured certain firearms components from commercial suppliers before using those components to produce additional firearms components using a 3D printer. The co-conspirators used these firearms components in connection with manufacturing operable firearms, that is devices designed to expel, and capable of expelling, projectiles through the use of an explosive.

    b. CLYBURN and other co-conspirators brokered the sales of these PMFs, including by negotiating, scheduling, and coordinating the unlicensed sale of the PMFs with potential purchasers via text messages. CLYBURN was present during the sales of many of the transactions which he brokered.

    c. After CLYBURN or his co-conspirators sold a firearm to a firearms purchaser, the co-conspirators divided the proceeds of the transaction among themselves.

**Overt Acts**

7. In furtherance of the conspiracy and to effect its object, the following overt acts were committed in the District of New Jersey and elsewhere:

a. On or about December 20, 2022, CLYBURN texted a confidential informant (the "CI") that he had two firearms available for purchase at a price of $2,300, and CLYBURN and the CI agreed to meet the following day. Later on or about December 20, 2022, CLYBURN texted the CI that one firearm was no longer available, but the other firearm remained available for purchase at a price of $1,200.

b. The next day, on or about December 21, 2022, CLYBURN met with the CI, who introduced CLYBURN to an undercover law enforcement officer posing as a firearms purchaser (the "UC"). Thereafter, CLYBURN, the CI, and the UC traveled to a co-conspirator's residence in Paterson, New Jersey in the CI's vehicle, where, upon their arrival, the co-conspirator entered the vehicle and sold a PMF to the UC for $1,200 in government-furnished funds. The co-conspirator and CLYBURN then exited the vehicle, while the UC and the CI departed the area. A short while later, CLYBURN texted the UC and informed the UC that CLYBURN had another firearm available for sale. Approximately one hour and 45 minutes after this text message, the UC and the CI returned to the co-conspirator's residence, where CLYBURN and the co-conspirator proceeded to enter the CI's vehicle before the co-conspirator, in CLYBURN's presence, sold an additional PMF to the UC for $1,200 in government-furnished funds. Following this second sale, CLYBURN and the co-conspirator exited the CI's vehicle and the vehicle departed the area.

c. On or about January 5, 2023, CLYBURN texted the UC that he had an additional firearm available for purchase at a price of $1,200. The UC

4

agreed to meet with CLYBURN that day at a co-conspirator's residence. Once the UC arrived at the co-conspirator's residence in the UC's vehicle, CLYBURN and the co-conspirator entered the vehicle, and the co-conspirator sold the UC a PMF and a 30-round magazine for $1,200 in government-furnished funds.

      d.      On or about January 9, 2023, CLYBURN texted the UC that he had two additional firearms available for purchase at a price of $1,300 and $1,200, respectively. Later that day, the UC met with CLYBURN and a co-conspirator at the co-conspirator's residence and purchased two additional PMFs for a total of $2,500 in government-furnished funds. After completing the sale of the two PMFs to the UC, the co-conspirator told the UC, "Next time I'll have about four," and further stated that "my mans, he makes these shits too, we're in cahoots with each other," referring to another co-conspirator.

      e.      On or about January 17, 2023, CLYBURN texted the UC that he had two additional firearms available for purchase at a price of $1,100 each. Later that day, the UC arrived at a co-conspirator's residence in the UC's vehicle, and the co-conspirator entered the UC's vehicle and sold the UC the two PMFs for a total of $2,200 in government furnished funds. While the UC and the co-conspirator were alone in the vehicle, the co-conspirator provided the UC with his cell phone number and stated, "sometimes I don't want to go through him," referring to CLYBURN.

## COUNT 2
(Engaging in Unlicensed Dealing of Firearms)

8. The allegations in paragraphs 1 through 3 and 5 through 7 of Count One of this Indictment are re-alleged here.

9. From on or about December 21, 2022 through on or about January 17, 2023, in Passaic County, in the District of New Jersey, and elsewhere, the defendant,

**SAVION CLYBURN**,

not being a licensed dealer, importer, and manufacturer of firearms within the meaning of Chapter 44, Title 18, United States Code, did willfully engage in the business of manufacturing and dealing in firearms.

In violation of Title 18, United States Code, Sections 922(a)(1)(A) and 2.

## **FORFEITURE ALLEGATION**

As a result of committing the offenses alleged in Counts One and Two of this Information, the defendant,

**SAVION CLYBURN**,

shall forfeit to the United States, pursuant to 18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c), any firearm and ammunition involved in or used in the commission of such offenses, including but not limited to:

1. A privately manufactured firearm ("PMF") consisting of a 3D-printed frame with a skull/rose printed pattern, a gold slide with no markings, and a gold barrel marked "19-9x19".

2. A PMF consisting of a frame marked "Polymer 80, Inc.", "Dayton, NV", and "P80", an unmarked slide, and a barrel marked "9mm" and "ZP".

3. A PMF consisting of a frame marked "Polymer 80, Inc.", "Dayton, NV", and "P80", a slide marked "Combat 19" and bearing an eagle symbol, and a barrel marked "9mm" and bearing an eagle symbol.

4. A PMF consisting of a silver-colored 3D-printed frame with green flecks, and unmarked slide, and a barrel marked "9mm".

5. A PMF consisting of a 3D-printed frame bearing a skull/rose printed pattern, an unmarked slide, and a barrel marked "9mm".

6. A PMF consisting of a 3D-printed frame bearing a skull/rose printed pattern, a slide marked "KT" with a pistol sight picture in the middle, and a barrel marked "19-9x19".

7. A PMF consisting of a 3D-printed frame bearing a skull/rose printed pattern, a slide marked "Combat 19" and bearing an eagle symbol, and a barrel marked "19-9x19".

8. Three PMFs consisting of a 3D-printed frame bearing a pattern of a naked woman and a broken heart, an unmarked slide, and a barrel marked "9mm".

9. One Kel-Tec SUB-2000 Rifle, bearing serial number EGN69.

10. A PMF consisting of a 3D-printed frame bearing a snake pattern and the words "Fuck you. No" on the right side of the firearm and a

crossed rifles pattern including the words "Technology changes. Rights Don't" on the left side of the firearm and a slide marked "Combat 19" and bearing an eagle symbol.

11. A PMF consisting of a 3D-printed frame bearing a pattern of a naked woman and a broken heart, a slide marked "Combat 19" and bearing an eagle symbol, and a barrel marked "9mm".

12. A PMF consisting of a 3D-printed frame bearing a skull/rose pattern, an unmarked gray slide, and a barrel marked "19-9x19".

13. A PMF consisting of a 3D-printed frame, a slide marked "Combat 19" with an eagle symbol, and a barrel marked "9mm".

## **SUBSTITUTE ASSETS PROVISION**

If any of the forfeitable property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c), to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property.

_Philip R. Sellinger by Az_
_____
PHILIP R. SELLINGER
United States Attorney

CASE NUMBER: 23-_____

# United States District Court
# District of New Jersey

**UNITED STATES OF AMERICA**

v.

**SAVION CLYBURN**

# INFORMATION FOR

**18 U.S.C. § 371**
**18 U.S.C. § 922(a)(1)(A)**

PHILIP R. SELLINGER
UNITED STATES ATTORNEY
FOR THE DISTRICT OF NEW JERSEY

MATTHEW J. BELGIOVINE
ASSISTANT U.S. ATTORNEY
TRENTON, NEW JERSEY
973.856.9179